Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open to calling to law. God save the United States in this honorable court. Thank you. We have one case on our docket this morning. It's 18-70035, Valentine v. Lumpkin. Counsel for Mr. Valentine, Mr. Webb. Good morning, your honors. May it please the court. My name is Stuart Webb and I represent Mr. Valentine. This is an extraordinary case, an extraordinary case for many reasons. It's extraordinary because it's a case in which counsel did absolutely no investigation for the first seven months after his appointment. An investigation of both the guilt and penalty basis did not begin until less than a month before the start of trial and less than a couple of weeks before the start of our dear. It's an extraordinary case because there are troubling racial implications in the case, both from the facts and circumstances of the case, threats about the KKK, and most extraordinarily, this note that defense counsel wrote to himself during the prosecution's punishment based testimony, where he wrote a note that said, Can you spell justifiable lynching? A comment that has troubling racial overtones and animus. And it's extraordinary because there really is no other mitigation waiver case like this one, where you see absolutely nothing on the record that indicates that Mr. Valentine wanted the death penalty. At the time of the trial, prior to trial, during the course of the trial, or during the punishment phase itself, there's no indication. And the first time ever we get any indication that Mr. Valentine indicated that he wanted the death penalty was from trial counsel's testimony 15 years after the trial. There's simply, in the research that I've done in preparation for the briefs and the argument, no other case that presents these kinds of circumstances. Now, the essence of the appeal here, this is, of course, as the court knows, and I know the court's very aware of the facts of this case, a multilayered case. It has many different layers of analysis we have to deal with. But at its core is the claim of ineffective assistance of trial counsel. And the district court's finding that that was not a substantial claim. And it was because of that finding that it's not a substantial claim that the district court found that Martinez wasn't applicable. And that Rule 60B-6 was denied. It was all based solely on that finding. So that's the first critical question for this court to address. And I think it ought to be, it is to me, clear that this is at least a substantial claim on deficient performance. The fact that counsel did no investigation and that's undisputed up until a few weeks before trial. That makes out a substantial claim of deficient performance of not proving it entirely. We cited in our reply brief the U.S. Supreme Court's recent decision in Andrus that I think is consistent with the belief that this is a substantial claim. And the prejudice part of the Strickland claim is also substantial. Because as the district court recognized, there was an extraordinary amount of mitigation that could have been produced had counsel conducted an adequate investigation. And that mitigation was produced at the time of the federal evidentiary hearing. Should I ask a question? Would that be okay? Oh, of course. Of course. That's what I'm here for. Your primary distinction from Schor v. Davis appears to be that Ballantyne's waiver was not a part of the trial record. Even though that argument was rejected in Schor, you know, the district court found that there was a waiver. And the fact that it's not in the record is okay under Schor. Are you proposing a new rule of constitutional law requiring that a waiver of the right to present mitigation evidence be made knowingly on the record? And if so, what is your authority for such a proposition? I am not proposing such a rule, though I do think that would be a good one and an appropriate one. But what I do think, Your Honor, is that the absence of anything on the record to show that there was a waiver is a significant fact to be taken into account when looking at the weight to be given to trial counsel's testimony. In Schor, there was acknowledgement on the record. Defense counsel told the jury that Mr. Schor wanted the death penalty and wanted the jury to answer the special questions in a way that would lead to the death penalty. And the trial court asked Mr. Schor if that was correct, and he said yes. So there really is no question. There's no dispute in the Schor case about what Mr. Schor wants. Right. There were legal issues raised about the adequacy of that waiver, but no dispute about what Mr. Schor wanted and what he asked his counsel to ask the jury for. And that his counsel did, as Mr. Schor wanted, which is very different than in this case where Mr. Sherrod, who says that Mr. Valentine wanted the death penalty, argued to the jury for a life sentence. He argued against what he later claimed his client wanted. And Mr. Valentine doesn't object to that. He doesn't say, no, that's wrong. That's not what I want. And Mr. Valentine, throughout the course of the trial, on several different occasions, had counsel put his objections onto the record. Mr. Valentine, even during the punishment phase of the trial, there was a prosecution witness, and Mr. Valentine was unhappy that defense counsel hadn't asked that witness any questions and complained to counsel. And counsel put that on the record. And that kind of behavior is inconsistent with someone who wants a life sentence. How do we evaluate the findings of the magistrate judge that were adopted completely by the district court? Don't we have to find an abuse of discretion under 60B? And the court made findings that he did, in fact, waive his mitigation case. Well, let me answer each part. Yes, it is an abuse of discretion standard. But an abuse of discretion standard is met when the court relies on either an error of law, which I believe we have here in the court's findings about whether it is a substantial issue or whether there is clearly erroneous factual basis. The court did make that finding that Mr. Valentine waived the available mitigation cases. The district court never found that Mr. Valentine indicated that he waived all mitigation. But the district court found was that he waived the available mitigation cases. And those were the witnesses who defense counsel had told Mr. Valentine, we're only going to testify about threats that were made against him by the decedents and their friends. And that they would be of no help. In counsel's opinion, they would be of no help at a penalty phase proceeding. And so Mr. Valentine acquiesced to counsel's analysis and said, don't call those witnesses. But there's no finding from the district court that he waived all mitigation. And I think that's an important distinction here. And it's one that I think that's blurred some in the briefing, but is what the district court found. Go ahead. What about the finding on page 24 of the magistrate's ruling? The magistrate concludes that Valentine instructed counsel not to call the available punishment witnesses because he did not want a life sentence. Well, that's where we take issue with the district court. That not the part about not calling the available witnesses, but because he wanted a life sentence. I really would like you to address the clearly erroneous, I can't talk today, clearly erroneous aspects of that. Yes, I'll be happy to do that. I think it was clearly erroneous because it's simply for a couple of reasons. One, it conflates the discussion that counsel had with Mr. Valentine about the rejection of the plea with the ultimate penalty punishment base of it. Remember that discussion that counsel had with Mr. Valentine was about whether or not to take the offer of pleading guilty to a life sentence. An offer that came very, very late in the trial after the prosecution had rested its case. And at that point, counsel said to Mr. Valentine, if you get convicted, you're going to get the death penalty. Mr. Valentine says, I don't want to accept the life sentence. He doesn't want to accept the offer. I can take the death penalty. And so that discussion was in the context of the plea offer. It wasn't in the context of punishment. Although the punishment witnesses were brought up by counsel at that time who told Mr. Valentine they would do you no good. So I think legally there's a, the court just conflated those two things and that that's wrong and clearly erroneous. I also think the clearly erroneous standard can be met when there's a definite and firm conviction that a fact finding is wrong. And that can be found in the circumstances. The best evidence of that is the circumstances that are contemporaneous with the trial. So we know that before trial, Mr. Valentine never expressed any desire for the death penalty. He cooperated with the investigator. He provided information about mitigation and he didn't try to interfere in any way with with the very late and superficial investigation that that occurred. So there's nothing before the plea offer is made that gives us any indication that Mr. At the penalty phase, as after that discussion is had and he he rejects the life offer, he goes to the jury. And and if you see if you read the closing arguments for both the defense and the prosecution, you'll see that the defense punched a lot of holes in the prosecution case and raised a lot of areas of reasonable doubt. So it's understandable why Mr. Valentine would would rather take his chance with. What were those holes? What were those? Well, well, I think there were three areas, Your Honor, in particular. One is he raised significant questions about the quality and the reliability of the police investigation. And in fact, the prosecutor on rebuttal admitted that this wasn't the best investigation case, that there were a number of witnesses and forensic evidence that just was never explored by the prosecution. The second part of the theme was that it challenged the reliability of Mr. Valentine's confession because the facts of the confession weren't always consistent with the facts of the crime or the facts of the crimes. For example, Mr. Valentine had said in his confession he crawled under the house three times before going in that under the house was all dirt. He would have been filled with dirt and there would have been dirt on the floor and at the crime scene. But there was none reported at the time. And there were a number of areas. And again, the district attorney in a rebuttal argument conceded that there were parts of the confession that did not make sense. So he scored some points there. And finally, the third one is that there was the complete lack of forensic evidence or scientific evidence tying Mr. Valentine to the crime scene at the time of the crime. So each of those areas. And if you combine them as a whole, provide a basis for reasonable doubt. The other thing that makes it reasonable to understand why Mr. Valentine would reject the plea offer is because a his lawyer had been giving him false hopes about the quality of his chances. Mr. Sherrod testified to that. The hearing that he had told Mr. Durham, he thought John would reject the offer because he had been giving him false hopes. And be the very timing of the prosecution's offer indicates it can indicate to any defense lawyer. And it indicated to Mr. Sherrod who testified to it that the prosecution was concerned about the holes in their case. Why else would the prosecution that had sought death all along from the time of his arrest suddenly at the close of their case offer a life offer unless they were concerned about what the jury might do with their case? What's your here? We have a master judge who held a live hearing. He apparently made a credibility finding that he believed what Mr. Sherrod or Sherrod had to say. So what is your best case that in weighing that all of this evidence we that we take that credibility finding and say it's clearly erroneous? Well, I think and I know there's a paragraph in my brief on clear error. And so I think it's the U.S. Supreme Court decision in chips that says United States versus United States chips and company that says even where there's credibility findings, you can still find clear error if the circumstances surrounding leave the court with a definite and firm conviction that a mistake has been made. And I think it's reasonable to think that that just as the magistrate judge may have conflated the discussions about the the the life offer and the discussions about the punishment based witnesses. So too might have Mr. Sherrod have had in the 15 years that that passed from the time of trial have conflated the conversation that he had, because one other important fact that that shows us there's no corroboration for Mr. Sherrod's testimony that John wanted. Mr. Sherrod never told that to any of the other defense team members. He never told that to Kathy Garrison, the investigator. In fact, Kathy Garrison, who gave an affidavit to state habeas counsel, never said anything about John wanting life or wanting to waive mitigation. None of the other lawyers said anything about that. And it seems rather striking and unusual to me that that Mr. Sherrod would not have said some either to the court or to his other defense team members. A client who had been preparing for penalty phase, and it was clear that they were getting ready for a punishment based trial, suddenly said, contrary to how he had been acting, that he wanted a life sentence. But but that never happened. So if you look at the contemporaneous evidence of what actually happened to trial and how Mr. Valentine behaved and how defense counsel and what the other defense team members said at the hearing, there's just no support. There's for for Mr. Sherrod's testimony and and where the circumstances not only don't support it, but actually contradict. And I think very importantly, Mr. During the penalty phase of the questioning of the witnesses, the fact that Mr. Sherrod argued for life, which he he couldn't have done if John had said Mr. Valentine had said, I want the death penalty. It would have been inappropriate for Mr. Sherrod to argue for life. And and that fact that Mr. Valentine didn't object to that argument. I think that tells us that that's somewhere in the 15 years. Some of this memory about what happened is the trial court's finding was Mr. Love. I'd like to ask you about something a little different. Sure. As I understand it, for to find Martinez applicable to to sort of forgive the procedural default, we not only have to find the ineffective assistance of trial counsel was a substantial claim. We also have to find that the state post conviction counsel basically committed ineffective assistance of of counsel himself. Isn't isn't that right? That's correct. OK, so give it give us your argument about why that lawyer on state post conviction rendered ineffective assistance of counsel. I mean, keeping in mind that that I'm assuming we have to defer to that council strategic choices just as we would to trial councils. So what's your argument that that there was I see there? OK, so so Mr. Birdsong, the state habeas counsel testified at the hearing before the match. And he testified that that he was concerned that there was no mitigation evidence, no, no defense evidence presented at the budget. And he thought the best issue was counsel's ineffectiveness for not presenting any evidence. But he never conducted any investigation. He he raised arguments and they weren't the same legal basis of the arguments we have today. They were about that counsel should have requested a continuing so that they conduct a fuller investigation and that he was ineffective for not calling the witnesses who were available. So so the legal issues were a little different. But either way, he didn't conduct any investigation and he didn't proffer any evidence to support the prejudice prong of Strickland. Now, now, even a novice. And instead, he argued that you should simply presume prejudice because of the severity of the sentence. Now, that doesn't get you in the Strickland door. We all know that we all know you can't win. You can't make a Strickland claim without having some evidence of prejudice. And and he investigated none. He testified that it wasn't a strategic decision. He just didn't do an investigation in this case. So there was no strategic decision not to present the evidence. He didn't investigate it and he didn't do it. And and instead relied on on some fanciful one sentence presumption of prejudice because of the severity of the crime. And to my mind, that pretty strongly demonstrates habeas counsels. And in fact, there's evidence about the standard of review at the end. I'm afraid that standard of care in 1998 wasn't that when the trial occurred? Yes. But the the habeas was filed in 2001. So the trial was in 98 and habeas. OK. Habeas was in 2001. What was the state of the case law at that time about mitigation? I mean, did somebody come on and say the standard of care for habeas counsel in 2001 was X? Yes, there there was. And the precise sites in the record are in my brief. Your Honor, the Texas guidelines indicated the importance of investigation for habeas counsel that a writ had to be investigated, required investigation on the part of counsel. And so if you identify an issue, you certainly have to investigate that issue. And for Strickland, it means an investigation of prejudice. And by that time, the first Williams case had been decided by the U.S. Supreme Court. It was Williams versus I think it's Taylor. I'm blanking on the last name. It was decided in 2000, the first of the Habeas cases that that found ineffective assistance for counsel's failure to conduct an adequate investigation. So certainly it was well known at that time that in preparing a writ and making a collateral challenge to the ineffective assistance of counsel, that you needed to conduct an investigation and proffer evidence of prejudice. When was the counsel's noted trial about lynching? When did that first come to light? That came to light in the lead up to it was in counsel's notes and it came to light during the federal evidence hearing. It's not at all till then. Not at all till then. That's my understanding. I could be wrong about that. It certainly didn't come to light in the state court proceedings. It's only in the federal proceedings. Counsel, in your brief and you you lead off talking about the crime. And then you say that he was that one of the victims had threatened to kill him and went looking for him on more than one occasion. And there had been epithets and taunts and a note about the KKK. However, there's no record citation there. The record citations start in the next paragraph of your brief. Where would I easily find all of that in the record? Well, I apologize for that, Your Honor. It is all in the trial. And I can certainly, if Your Honor wants, file a letter to the court providing you with the citations to the trial record. I also believe it may be in the factual summaries of some of the prior decisions, but I couldn't point to you right at this instance. Can you tell me what witness brought it up so that I could just easily find it in the trial transcript myself? Yes, I believe it was brought up by some of the witnesses, but you don't know which one. I don't know which one off the top of my head. I apologize. If I did a search for KKK and did not have not found it yet. But but I'm not saying it's not there. I'm just you know, I need to look through the record. So thank you. OK. And if you'd like, I'd be happy if I can find that quickly to to send the court a letter. What is your best case that talks about the interplay between Rule 60B and AEDPA? In what aspect? I mean, Buck versus Davis certainly talks about the interplay between Rule 60B and AEDPA. But more specifically, I'm not sure what you're asking. You've saved some time for rebuttal. I'm sorry. I said you have saved some time for rebuttal. Yes, I have. Thank you very much. I appreciate the court's time. Counsel for Mr. Lumpkin, I'm afraid I would mispronounce your last name. Your Honor, it's Ari Kunin, pronounced Kunin from the Attorney General's office for the director. May it please the court. The district court did not abuse its discretion in denying Rule 60B relief. To conclude otherwise, this court would have to find at least seven different grounds to the contrary. It would have to let Ballantyne overcome the relitigation bar in AEDPA of 2254D, the evidentiary bar of 2254E2. Then it would have to find that the Supreme Court's rule in Martinez versus Ryan applies to Ballantyne's claim and that state habeas counsel was constitutionally ineffective. On top of that, the court would have to find that Ballantyne didn't forfeit his ineffective assistance grounds based on his instruction to trial counsel not to present mitigation witnesses. And even then, on de novo review, he would still have to show deficiency and prejudice from trial counsel's performance. And Ballantyne can't show any of those, and that's why the court should affirm. But I'd like to start with an overarching point that goes to what Mr. Lev described as the first critical question, this question of whether there is a substantial claim. Ballantyne got every opportunity to develop and present his claim in federal court. He had an evidentiary hearing. He was allowed to put on witness testimony. The ultimate result of that was a finding from the district court that even looking at all of this new evidence, it would not show prejudice. So Ballantyne's really already gotten all that he could hope to achieve through the lens of Martinez and Truvino and getting that type of federal review. And the second component of that is that the evidence adduced at the evidentiary hearing was ultimately unfavorable to him, specifically trial counsel's testimony in explaining why there had been mitigation witnesses who were ready, willing, and there to testify if needed, but were not called. And he explained why they weren't called. And there was no contravening testimony on the other side. And all of those witnesses, I thought, dealt with the, did he actually shoot? Was there some reasonable doubt? They were not mitigation witnesses in the classic sense, in the classic sense that the Supreme Court has talked about. I mean, the Supreme Court has written so many times about this kind of evidence, even though it's double-edged, it has to come in and they've reversed us over and over again because of this kind of evidence was not allowed, was not developed and put in the record. No, Your Honor, that's not entirely accurate. And I want to take that in two parts. First, if the court looks at footnote seven of the R&R, I think it's page 29, footnote seven of the R&R, it talks about a witness named Terry Rucker. He's at least, there's at least one, if not three or four witnesses, the district court found could have testified about Valentine's family history. And I believe Valentine's reply is completely silent about Mr. Rucker. I mean, those are findings about what witnesses could have testified to. So I don't think that framing is accurate. The second part is this is not. You don't have medical, any medical examinations, no testing about his possible brain damage, none of that. I mean, that's, that was not developed. So I misunderstood Your Honor's question. I thought Your Honor was asking whether any of the witnesses who were ready to testify could have presented mitigation evidence. Obviously, none of them were medical experts and that's right. But even looking at the best evidence that Valentine has had the opportunity to muster, it does not show a substantial likelihood of a different trial outcome. And under Strickland and Richter, that standard is exceptionally high. The state's case in aggravation here was simply overwhelming. That's a different argument. That's a different argument. To say that he had mitigation witnesses ready to go is one thing. The balancing is different. I just take issue with your assertion that he had mitigation witnesses ready to go. I don't see that he did. My point goes to a question of forfeiture, which the district court identified. That's a third point. I'm just talking about what you did raise. I respectfully take issue with you when you say trial counsel had mitigation evidence, witnesses ready to go. I just, I don't see that in the record. Respectfully, Your Honor, I agree that trial counsel did not have mental health experts lined up to testify. But, of course, mental health experts are not the only type of witnesses that can offer mitigation evidence. What I meant was that. I'm sorry. Go ahead. Go ahead and answer the question. What I meant was that there are witnesses who were ready to provide mitigation testimony at the punishment phase. The court looks at ROA 6697. There's a statement from trial counsel where he says he was instructed not to present mitigation witnesses. And Ballantyne is competent to make that choice. And trial counsel can reasonably follow his client's instructions. Well, we have cases to the contrary. We, in the Fifth Circuit, we have cases that say counsel has to tell him what mitigation experts or witnesses are going to say. And I know what Shiro says, but Shiro assumed that there was such a duty and then went forth and analyzed it. And after that, the Fifth Circuit has at least two cases that says no. Because since counsel didn't do an effective investigation and didn't tell the client what mitigation was put on, it doesn't matter if the client said, oh, well, don't put on mitigation witness. You didn't cite those cases from our court. I'm not I'm not familiar with which cases specifically your honor is referring to. But the instruction not to present mitigation witnesses would bring him squarely within shore and previous cases like Autry or Amos that say it's it is not possible to demonstrate prejudice on a record where mitigation witnesses were not allowed to testify. And also that in shore, I believe, at page 633 of the opinion, citing Shiro versus Landigan, explaining that that also forecloses a claim of deficient investigation. But even if the court were inclined to agree with Mr. Ballantyne that there were problems with the investigation, there is a separate argument that the result of it would not have made a reasonably probable difference in the trial outcome. Ballantyne is arguing that it's conceivable there could have been a different result, but that's not the standard under Richter. The state's case in aggregation was was simply overwhelming. There was no connection between Ballantyne and two, at least two of the victims that he that he shot in the head, shot three sleeping teenagers in the head. Only apparently knew one of them didn't know the other two had been stealing weapons from an early age, assaulted at least two correctional officers within the jail system. And on top of that, the jury heard horrific testimony from a woman that Ballantyne kidnapped and subjected to a horrible experience. Incredibly compelling testimony that his new evidence that how he's had, he's had every opportunity to develop the evidence he thinks the jury should have heard. It pales in comparison to that type of aggravating evidence. You're putting us up there to testify about his sexual abuse as a child. And in Mr. Ballantyne didn't want him to or do we not know if Terry Rucker was new about that? I don't I simply don't know the answer to that, Your Honor. But Ballantyne's instructions not to present witnesses such as Rucker prevented the court and this court from knowing what the witnesses would have said. And it's exactly that type of instruction that this court has held forecloses it forfeits a Strickland claim. And that is a separate question about whether the claim is meritorious or the strength of the evidence that could have been adduced. That's just the nature of forfeiture. Ballantyne's argument is, in a sense, you should have told me, counsel, what the consequences of my decision would have would have been. But, of course, at the time, I think, as the courts have recognized, there simply is no requirement that that type of decision be knowing and informed. And there's certainly no requirement that a colloquy or further discussion be made a part of the trial record. That's the type of decision that if the client tells the lawyer that they can make, then trial counsel can reasonably follow that instruction. Correct me if I'm wrong. Do we have an affirmative finding from the magistrate adopted by the district court that Mr. Ballantyne's motivation for instructing counsel not to call mitigation witnesses was not so much that he wanted to die, but that he did not want to be in the general population of the prison where he would be subject to violence because of the white Aryans that he killed? Do we have a finding to that effect? He did, you know, describing that this is why he instructed counsel? I don't have that citation right on hand, but I want to point out that on page 31 of the R&R, contrary to my opposing counsel's suggestion that they never found that he would have waived all mitigation, it says on page 31 as part of the discussion closing out the Strickland analysis, it says Ballantyne's decision to reject the plea offer of a life sentence and instruct counsel not to call any punishment witnesses because he preferred the death penalty. That's a finding. It is part of a larger Strickland analysis, and that gets into subsidiary legal determinations, but that's an underlying finding right there. I'm just trying to get at whether this court is going to have to, where are we going to have to find clear error in what the magistrate in the district court found? Because I thought opposing counsel was discussing some of those findings in terms of clear error, and I'm just trying to get at what would we have to find was clearly erroneous in order to even get to this. Was the IATC claim substantial? Well, there's no clear error on a record like this, and if the court looks at Ballantyne's arguments, they are based on conjecture and inferences from maybe, let's say, debatable aspects of the record. But as I've explained in the director's brief, that type of argument does not show clear error. Well, that's what I mean. I mean, I understand the plausible story that Mr. Ballantyne's counsel is telling us. It's plausible, but it's also plausible that he may have instructed his counsel not to call mitigation witnesses for the reasons that are stated in the magistrate's report. And if there are two plausible stories, I fail to see how we can find clear error. Oh, the court absolutely cannot find clear error. When the court's faced with two plausible accounts, and the district court has chosen a plausible account, in large part based on credibility determinations from the only witness that testified to the fact that Ballantyne now disputes, that is not a basis that this court could find clear error. And Ballantyne, again, had the opportunity at this evidentiary hearing, certainly could have testified, if he recalled his conversations and his explanations differently. He needed to explain that at the evidentiary hearing and let that record be developed. What he can't do in a federal habeas case is sit on silence in the record and simply argue against it and try to undermine the only testimony that the district court had in front of it. And that would not be a basis to find clear error to accept the arguments that Ballantyne makes based on conjecture. Counsel, are you waiving your very late argument that there is exhaustion here? Because you didn't start with that, even though that's in your briefing. But it seems that we have perhaps law of the case that it's unexhausted. So are you going to make that argument that it's exhausted? And if so, we need to talk about it. But you didn't mention it so far. So maybe you decided not to mention that. Your Honor, I fully intend to discuss that today. I'm happy to discuss that right now. It was my my first point that he would have to overcome or avoid the relitigation bar of 2254 D. And we're not waiving that argument here. Certainly a new argument. And didn't the state argue to the contrary earlier? And haven't we had a whole series of opinions that took the contrary position in this very case? I understand your Honor's question in two parts. Was it raised earlier at the time you described? The answer is no. Were there previous decisions? The answer is yes. But my response on that would be, especially in light of Langley versus Prince, this court's en banc decision from just a couple of years ago. We know now that 2254 D is a provision that speaks to courts. It's not the type of provision that really speaks to parties in a way that forfeiture or law of the case, those types of things would apply. On top of that, because of the intervening change in law in Cohen versus Penholster and the Lewis case and the Clark case that we've cited, that earlier rubric of factual exhaustion that existed at the time this court looked at the issue is no longer in existence. Now, in light of Cohen versus Penholster, the only question is to look at the record that was before the state court when it looked at Valentine's claim and assess it for reasonableness. Well, you're putting the cart before the horse, it seems to me. I mean, first, the issue has to be if it's unexhausted, you don't get the penholster. So you have to show that you can't say, well, there's no evidence and therefore you can't have evidence. Well, that's only true for exhausted claims. Well, Your Honor, I would I would point the court to Valentine's own framing of his claim. I think if you look at page 14 of his brief, he talks about this claim being presented to the state court, to the CCA. And what he says is missing is the prejudice witnesses that he's now come to federal court to develop. So the court can't accept Valentine's argument that, well, at some point in time, some court said it may have been unexhausted because 2254 requires this court to assure itself it's not treating adjudicated claims as unadjudicated. What's even more remarkable is that even under his his Martinez arguments, this court would have to find, I think, really the first time ever that Martinez goes beyond what limited role the Supreme Court has said it's supposed to play. Right. It's not supposed to be an opportunity for state for for state prisoners to come to federal court with new and different evidence to support claims they already tried to litigate unsuccessfully in state court. Martinez is supposed to be about not completely entirely forfeiting an IATC claim, not doing what Valentine is trying to do here. And even in the 28 J letter that Mr. Valentine submitted last night, it seems to indicate that what he's complaining about is that state habeas counsel didn't do a good enough job in in in briefing, briefing up and developing, presenting the claim. But it's still the same underlying legal claim. It's a claim based on a failure to investigate and present mitigation evidence. It's a failure of ineffective assistance claim at the punishment phase. It's the same claim. So I asked Mr. Lev, isn't it true that we that he would also have to show that state habeas counsel was ineffective as one of the gateways for getting at Martinez? What is your response to his argument that will, of course, state habeas counsel is ineffective. He didn't do any investigation at all. He didn't justify it in his testimony. So my response is that under Strickland, when you're looking at state habeas counsel's performance, we're looking at objective reasonableness. And also, is there a reasonable probability that the result of the state habeas proceedings would have been different? Putting aside everything that Mr. Lev said about state habeas counsel's investigation, there's no indication whatsoever that this claim would have fared any better before the court of criminal appeals than it did in the district court. That fact alone would foreclose the type of finding that he needs to overcome procedural default through Martinez. Now, as far as the reasonableness of state habeas counsel, I mean, we know from Mr. Birdsong's testimony that he did sit down and then have a conversation with Mr. Valentine. I believe they talked about the reasons for why he rejected the life sentence. I don't think he recalled all that much more than that. But the question under Strickland would be objective reasonableness. Was it objectively unreasonable to present the claims that he did present instead of in exactly the same version that Valentine did now? The answer is no. And if he was mistaken about how to present that claim, a mistaken belief alone is not enough to show deficient performance under Strickland. So his claim would fail for all of those reasons. On top of that, state habeas counsel would have seen from the face of the record that a life sentence offer had been made and rejected by Valentine and that there were witnesses who were ready to testify the day of punishment and ultimately not called. State habeas counsel, reasonable counsel, would look at that record and think, my goodness, if I'm going to have to make a claim to the CCA, I'm going to have a really hard time showing any prejudice based on a record like that. Because either he didn't, either Valentine didn't want a life sentence or there were strategic reasons for not calling those mitigation witnesses. I'm going to really have an uphill battle. I'm sorry, I just cannot let you sit here and say there were mitigation witnesses when there were. With all respect, you keep saying state habeas, that was the first time that he could have developed a record outside the trial record. I mean, he had every opportunity to have the guy tested, have Mr. Valentine tested, to have mental experts evaluate him, to talk to people who knew him about his school records, all of that. None of that was done and it seems pretty apparent that by 2001 the Supreme Court had written about this type of mitigation evidence and none of that was pursued. I'm sorry, I just take issue with the notion that there was, quote, mitigation evidence, unquote, that was ready and not put on at trial. Your Honor, I think maybe I'm not explaining the significance of that fact as well as I could. It was never presented to a court that did the balancing in the state process. There was no balancing of the mitigation evidence against the aggravating evidence. That was never done by a state court because it was never presented to the state court. But what we know from the federal evidence you're hearing is that that's now happened. The most Valentine can say is that it should have happened in some court. He's now had that opportunity and we know that the evidence that was produced, there's no suggestion that state habeas counsel was going to come up with better evidence than what Valentine came up with in federal court. He didn't make any effort is the point. The question is, was his investigation reasonable? He didn't do an investigation. That's my only point. I'm not taking issue necessarily with what else you're saying, but I'm just not going to sit here and let you keep saying there was mitigation evidence. I just don't think that's the best reading of Strickland because it's not just that there's only one standard. It's the constitutional standard. It's either the investigation or investigation. It's a two-part thing. You have to have unreasonable plus prejudice. You addressed the prejudice prong. I agree. But that's different from whether his investigation was reasonable. But it's not. So deficiency on investigation, it's either investigation is deficient or some inquiry is made that makes it reasonable not to continue investigating. What evidence was there that made it reasonable for him not to do any kind of traditional mitigation analysis? State habeas counsel is not standing in the same shoes as trial counsel. He's not just investigating against a cold record. He's looking at the trial record and reasonable state habeas counsel has to look at how likely different avenues of investigation would have been on a record like this. It was not reasonably probable that the type of investigation Ballantyne things should have happened would have produced the type of claim that the CCA was reasonably likely to have accepted. But even if the court were to accept those arguments that Ballantyne's making and false state habeas counsel as ineffective, he would still be faced with that problem of both forfeiture that the district court identified and the de novo problem. But separate from that, by arguing that he's pleaded himself directly into Edba's evidentiary bar of section 2254 E2 in saying that state habeas counsel wasn't diligent enough in developing the evidence that he thinks that should have been presented. That's exactly the type of situation where section 2254 E2 bars that new evidence. So Ballantyne couldn't have it both ways. Either it's going to be barred by E2 or the type of argument he's making that state habeas counsel made the claim. And there's no suggestion whatsoever that state habeas counsel raised a frivolous claim. He just thinks that state habeas counsel didn't raise it in the best form that he could have. He could have raised it more or less. What's your best case for the idea that E2 would bar, I guess, adducing more evidence about state habeas counsel's performance? Do we have cases that would apply E2 in that situation? Because my concern there would be if E2 applies, then is Martinez really ever going to have any bite? A couple answers. A couple answers there. As a case like this one where the district court said, I'm going to hold an evidentiary hearing on cause and prejudice, but be prepared to address all issues through this hearing. The vehicle used was to assess cause and prejudice. E2 is a separate statutory requirement that stands alone from the judge made procedural default exception under Martinez. That's not the sort of interplay that courts have the discretion to create further equitable exceptions. When E2 applies, it applies by its plain meaning. So in a case like this, the result would be the district court held the evidentiary hearing, the result of which for merits purposes, E2 would bar the new evidence Valentine concedes he needs to win. Had the district court not held the evidentiary hearing, it wouldn't have abused its discretion. And I would point the court to Shiro versus Landrigan, where the Supreme Court talks about it's not an abusive discretion to not hold an evidentiary hearing when the result of it would not support relief in any event. And it would be that type of case. Mr. Kunin, I'm not sure you've answered Judge Duncan's question, which was going to be my question as well. If you have that interpretation of E2, doesn't that effectively nullify or undermine significantly Martinez and Trevino? Because virtually every ineffective claim is going to have this type of evidence. That's what your opposing counsel also argues. So you're just saying, well, it's plain language. You're stuck. That doesn't answer the question of, well, does that totally gut Martinez and Trevino? Well, so it doesn't totally gut Martinez and Trevino. I think my opposing counsel takes some of our argument out of context. To give one example, consider a trial lawyer who requests the wrong jury charge on direct appeal. Well, he's not really going to be able to argue about that because it will be considered invited error, most likely. But in habeas proceedings, you can easily imagine saying there's no strategic reason for asking for the wrong jury charge. It's just wrong. And because it was given, you can look at prejudice in light of the existing record. So that's just one example. What do you do with a mitigation case where the person does no mitigation and there's no record to say that he didn't ask that no mitigation be done? They were enthusiastically supporting mitigation, but it wasn't done. What's the answer there? Does E2 bar the new information that would come in in the hearing on that? So E2 could bar it if the conditions of E2 aren't met. But also recall that evidentiary development can still happen in state court. It's quite possible to come to federal court with a record that was developed on perhaps other claims in state court. Look at the record that was developed and use that to present your claim in federal court. So there are time with that because the Supreme Court said you get the chance to show that state habeas counsel was ineffective. Now, how can you do that when it could not have been developed in the trial court and you're trying to show to show that the record that state habeas counsel developed was inadequate? How can you you're saying you're limited to the inadequate record record that state habeas developed? That's all you can look at to prove that state habeas was ineffective. That's your argument, right? But in a case like this, this court ultimately doesn't have to reach any of those issues because here the court below went above and beyond to look at that evidence that would that would what I'm saying would be an additional reason to affirm, but the court doesn't have to reach that question. And on top of that, I'd like to circle back to the the actual mitigation evidence that was presented at this evidentiary hearing. And I think as this court recently explained in that in that Canalis opinion that we cite in the director's brief, this type of weak mental health evidence is weak mitigation evidence. The mitigating effect it has, especially when it's really untethered to the to the crime, the connection is incredibly tenuous. It is not the type of evidence that would show a reasonable probability of a of a different trial outcome. And I've looked at Valentine's brief time and again, I still do not see the explanation of how the mitigation evidence and the evidence of the childhood, especially for a crime that was committed when the defendant was about 30 years old and had multiple literal chances to walk away from this crime, including going outside to clear the jam in his weapon after trying to commit the crime and then coming back in and committing the murders. Walking miles and miles to the house to go commit the crime is difficult to imagine the type of mitigating evidence that could overcome that type of extremely serious aggravating evidence. This is a not a case where there is a substantial likelihood of a different trial result and putting aside all of the barriers that I discussed at the opening at its core. Valentine's claim is meritless. If there are no further questions, we ask the court to affirm. Thank you. Yes, Mr. Thank you, Your Honor. Can you hear me? OK, so so let me start with that. That last comment and talk about the mitigation evidence. It's the same kind of mitigation evidence that the Supreme Court has found prejudicial in Williams and Wiggins and Ron Pilla and Porter and and that line of cases. And I think it's particularly important to when we think about prejudice under Strickland to to think about the one juror standard. And even with evidence that might be double edged, that means there are aggravating circumstances to it may be aggravating inferences, but there's also mitigating inferences. And even if some jurors would credit the aggravation part, other jurors would credit the mitigating aspect of the evidence. And it only takes a reasonable probability of one juror to reach a different result to find that there's something about the mitigation that reduces the defendant's moral culpability. Now, we've known for years that mitigation does not have to be an explanation or an excuse for the crime itself. Skipper teaches us that Skipper that said that good conduct in prison after the arrest is mitigation that can't be excluded from the jury's consideration. And certainly that has no connection to the crime itself. And the court has said that in other cases, like like tonight, it doesn't have to be connected. Mitigation humanizes a defendant, reduces his moral culpability and gives a single juror some reason to feel like death sentence might not be appropriate in this case. And we've shown in our reply brief that there are many highly aggravated cases with multiple killings that have resulted in life sentences where mitigation has been presented to a fact finder or to a jury. As for state habeas counsel's rule, this is not a case where state habeas counsel made a strategic decision not to raise a claim about counsel's actions at penalty phase. He tried to raise those claims, but he bungled them because every lawyer knows Strickland requires a showing of prejudice and he made no showing of prejudice. It's almost per se ineffectiveness unless there's some good explanation for arguing that unless he investigated and didn't find anything. And that didn't happen here. So this isn't a question. And what state habeas counsel raised is not the same as what we raised as what was raised in federal court first by by Ms. Brand, who was the original habeas lawyer and then at the evidentiary hearing. The what what state habeas counsel raised was he didn't present any witnesses and he should have asked for continuance. What we raised, what Ms. Brand also raised was that he conducted a deficient investigation. Those are different. But even besides that, as I said, in my initial time, the difference between arguing for a presumption of prejudice because he got sentenced to death versus actually presenting evidence fundamentally alters the claim. And that is still the test between new claims and old claims between the claim that was raised in state court and the claim raised in federal court. Does the new evidence fundamentally alter the claim and place it in a significantly different position? Counsel suggests that that test is no longer applicable. But the Nelson case that we cited in our letter yesterday shows that it is still the applicable and concerning test. And and there's there can be little doubt that that there's a fundamental difference between a argument for per se prejudice for presumption of prejudice and an argument that produces a plethora of information of mitigating evidence to show the Strickland prejudice problem. So so they're not the same claims. They're not legally the same claims. They're not factually the same claims. So fundamentally different claim. And so this court's rulings that this was an unexhausted claim and and the rulings that have been the basis for the last 15 years of litigation, they're still good. And and not only shouldn't you look back at them, there's no reason to. Those are still the good and the proper rulings. As to as to E2, I'm going to rely mostly on my briefing for that. But I would just say in response to Judge Duncan's question that there are no cases that have applied E2 in a Martinez situation, not in this circuit, not in any other circuit. It's an argument that the state is making, but there's no cases that support that at this point. That's my time, I think. Thank you very much for your time and attention today. Thank you, counsel. We appreciate the arguments you've made in your briefing. We will take this case under submission.